No. 20887.

J. B. EHRSAM AND SONS MANUFACTURING COMPANY *v.* GUARANTY BANK AND TRUST COMPANY.
(404 P.2d 844)

Decided August 23, 1965.

C. J. HAFERTEPEN, for plaintiff in error.

QUIAT, SEEMAN, QUIAT & WOODS, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE McWILLIAMS.

J. B. EHRSAM & SONS Manufacturing Company, a Kansas corporation which shall hereinafter be referred to as Ehrsam, made claim for the sum of $8,704 from the Guaranty Bank & Trust Company, a Colorado banking corporation which shall hereinafter be referred to as the Bank. Upon trial of this matter, the trial judge found in favor of the Bank and accordingly entered a judgment dismissing Ehrsam's claim. By writ of error Ehrsam now seeks reversal of this judgment.

This controversy was submitted to the trial court upon an agreed statement of facts. The chronology of

the significant events giving rise to the present controversy is as follows:

1. Mead & Mount Construction Company, hereinafter referred to as Mead & Mount, was the prime contractor in the construction of the First National Bank Building in Denver and it in turn sub-contracted certain elevator work in that building to the Anderson Elevator Company, which latter Company shall hereinafter be referred to as Elevator;

2. Ehrsam thereafter sold two Ehrsam style "B" Belt Manlift elevators, plus six Manlift Hood guards to Elevator for a total price of $8,704, which materials were thereafter incorporated by Elevator into the First National Bank Building;

3. As of January 8, 1958, Elevator, which had a general checking account in the Bank, was indebted to the Bank, and on that date in order to take care of such indebtedness and in order to get additional funds executed and delivered to the Bank a promissory note in the amount of $10,000, payable to the Bank, which note provided among other things, the following:

". . . . The payee bank is hereby given a lien for the payment of this note and all other claims against the undersigned which now exist or which may hereafter arise in favor of the bank, upon the balance of any account of the undersigned with said bank and the bank is hereby authorized at its option, at any time, to appropriate and apply to the payment and extinguishment of this note, and of any or all of the notes, claims, or liabilities herein referred to, all moneys, securities, and credits now or hereafter in the hands of the bank, on deposit or otherwise to the credit of or belonging to the undersigned. It is further agreed that in the event of insolvency of the undersigned, or on the occurrence, in the opinion of the payee bank, of anything evidencing insolvency, this note, and all of said notes, claims, and liabilities, shall become and be immediately due and payable without notice or demand of payment. . . ."

4. As security for the aforementioned note, Elevator on January 8, 1958, executed and delivered to the Bank an assignment of certain accounts receivable, among which was the account of Mead & Mount in the amount of $9,748.10, the Bank complying with all of the statutory requirements concerning the assignment of accounts receivable;

5. In this assignment Elevator agreed to collect said accounts, including that of Mead & Mount, at its own expense and to immediately deliver to the Bank all proceeds so collected;

6. As of January 10, 1958, Mead & Mount owed Elevator under their contract the approximate sum of $9,000, but refused to pay the same, or any part thereof, unless and until Elevator delivered to Mead & Mount receipted bills showing that Elevator had paid for all labor and materials used by it in the elevator work in the First National Bank;

7. On January 10, 1958, Elevator informed Ehrsam that Mead & Mount refused to pay Elevator the sum then due it under their sub-contract until such time as Elevator could produce receipts to show that it had paid for all of the labor and materials used by it in the elevator work on the First National Bank Building; whereupon Ehrsam, even though Elevator still owed it the sum of $8,704 for the materials which it had theretofore sold Elevator, nevertheless delivered to Elevator a receipted bill therefor which was stamped as having been "paid," Elevator in return promising to collect its money from Mead & Mount and deposit the same in its account in the Bank;

8. On January 13, 1958, Mead & Mount issued and delivered its check in the amount of $8,285.88, payable to Elevator and on January 16, 1958, Elevator deposited this check, along with certain other funds of an inconsequential amount, in its account with the Bank;

9. On January 15, 1958, Elevator issued and delivered

its check in the amount of $8,704, drawn on the Bank and payable to Ehrsam;

10. On January 17, 1958, the Bank for various and sundry reasons formed the opinion that Elevator was insolvent (an opinion which proved to be quite correct) and it promptly proceeded to pay or credit to itself the balance of Elevator's account, *i.e.,* some $9,373.65, and applied the same upon the aforementioned note of Elevator, no part of which had ever been paid;

11. On January 16, 1958, Ehrsam deposited the check which it had received from Elevator with its bank in Kansas City, and in the usual course of business this check was presented to the Bank in Denver on January 20, 1958, at which time the Bank refused payment on the same because there were insufficient funds in the checking account of Elevator as of the date of presentment.

As was suggested above, Elevator became insolvent to the end that it could not, and did not, pay its admitted indebtedness to Ehrsam in the amount of $8,704. It was on this concatenation of events that Ehrsam then brought an action against the Bank for the sum of $8,704. The trial court determined that the Bank was not liable to Ehrsam, and it is this judgment which Ehrsam now seeks to reverse.

Ehrsam bases its alleged right to recover from the Bank almost entirely upon *Cox, et al. v. Metropolitan State Bank,* 138 Colo. 576, 336 P.2d 742, contending that its position in the instant case is completely analogous to that of Cox in that case. With this contention we do not agree.

In *Cox v. Metropolitan State Bank, supra,* one Cox brought an action against the Metropolitan State Bank to recover a certain sum of money which one Rust had deposited in that bank and which the bank had then seized and applied on Rust's prior indebtedness to it. In that case we determined that Cox's relationship to Rust — whose position, according to Ehrsam, is supposedly analogous to that of Elevator in the instant case

— was that of principal and agent, and further that Rust did not "own" the $5,000 there in question, but that on the contrary this $5,000 was held in trust by Rust for Cox. It was on this line of reasoning that Cox was permitted to recover from the Metropolitan State Bank.

■ In the instant case, however, the relationship between Ehrsam and Elevator was *not* one of principal and agent, but solely one of creditor and debtor, and an unsecured creditor at that. Elevator did not hold the money which it received from Mead & Mount in trust for Ehrsam; on the contrary under the assignment Elevator was under a duty to deliver such money, not to Ehrsam, but to the Bank.

Furthermore, according to the stipulation between the parties, Ehrsam gave Elevator a receipt showing its bill as paid in full, when in fact it was not, solely on the strength of Elevator's promise — not to collect the money from Mead & Mount and then pay Ehrsam — but to collect the money and deposit the same in its checking account in the Bank. All of which is just what Elevator did.

Actually, Ehrsam's status instead of being analogous to that of Cox is more akin to that of Tribune Grain, Inc. and Sullivan, Inc., which companies along with Cox were also claimants against the Metropolitan State Bank. As regards Tribune Grain, Inc. and Sullivan, Inc., we held that they had *no* claim against the Metropolitan State Bank, for the reason that each had merely sold certain merchandise to Rust for which Rust had admittedly made no payment; hence the relationship between those two companies and Rust was held to be solely one of creditor and debtor. And such is the only relationship which existed between Ehrsam and Elevator.

■ Another very important distinction between the instant case and *Cox v. Metropolitan State Bank, supra,* is that Elevator, several days before it obtained the receipted bill from Ehrsam, which no doubt enabled it

to then receive payment from Mead & Mount, had already assigned its interest in the Mead & Mount account to the Bank. It is agreed that this assignment was valid and conformed to all of the applicable statutory requirements. Having thus assigned to the Bank its interest in the Mead & Mount account, Elevator upon receiving the check from Mead & Mount had thus obligated itself to turn over these monies — not to Ehrsam — but to the Bank to apply on its indebtedness to the Bank. Hence, having assigned to the Bank its interest in the Mead & Mount account, it had nothing to hold in trust for Ehrsam, because those monies already belonged to the Bank under the previous assignment.

Ehrsam's secondary contention that under the assignment Elevator's account receivable from Mead & Mount was subject to any set-off or deduction which Mead & Mount might have against Elevator, and that in this connection it (Ehrsam) stands in the same position as Mead & Mount, has been examined and also found to be wanting. Just how Ehrsam would stand in the shoes of Mead & Mount has not been explained. There is no privity of contract between Ehrsam and Mead & Mount, which companies are legal strangers to each other. And a further answer to this particular contention is that Mead & Mount apparently had no set-off against Elevator, at least none of any consequential nature, but on the contrary it has paid in full the amount it owed Elevator, namely some $8,285.88.

Nor does the additional suggestion that the Bank is in some manner bound by the alleged statement of its alleged agent, Elevator, to Ehrsam to the effect that it (Elevator) would pay Ehrsam's bill out of money Elevator received from Mead & Mount stand up under close scrutiny. In the first place, under the agreed statement of facts, Elevator did *not* agree to pay Ehrsam out of the monies received from Mead & Mount, but only agreed to deposit such monies in its account in the Bank. This it did. Under all these admitted cir-

cumstances, Ehrsam by no legerdemain can saddle the Bank with Elevator's unpaid debt.

The judgment is therefore affirmed.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE SUTTON concur.